The following opinions were delivered :
By Mr. Justice Nelson.
From the view I have taken of this case, it will not be material to examine at large the question, whether Mrs. Gahn is, or is not, merely a surety for her husband, and entitled to all the rights and privi *318 leges belonging to that character; for conceding that she be considered as a surety, I ana still of opinion she is holden for the entire sum due upon the mortgage. The examination of the authorities have led me to concur with the court below on the point of suretyship, and I am unable to discover any satisfactory reason upon principle for distinguishing between the rights of the wife in this respect and those of any other person. After the law has carved out her property at discretion, the interest or estate given to the husband, and which I think is sufficiently liberal, namely, the whole of her personal property absolutely, and the rents and profits of her real estate during his life, the remainder, it seems to me, is as completely her own individually, as if she was a feme sole. It is her separate estate to all intents and purposes, beyond the reach of the husband, his creditors, or any one claiming under him, as much so as if she was a stranger. If, then, she pledges this estate for the security of his debts, why should she not be viewed in respect to it in the light of a surety, as much so as if she had pledged it for a stranger?
It seems to me, to subject this property (which the law has thus distinctly separated from that of the husband) in the same way as if she was a principal debtor, except as to heirs and legatees, which is the doctrine of Tate v. Austin, 1 P. Wms. 264, 2 Vern. 689, would be not only a manifest departure from the expectation and intention of the parties, but a violation of principles settled and in daily application to like *cases. Generally, so far as the interest of the mortgagee is concerned in these cases, he knows that the
debt was the husband’s and that the separate interest of the wife would be in no way responsible for it, until she pledged it as security; at all events, without such knowledge he would not be affected by her character as surety, and with it I see no objection to the operation of the principles applicable to it; and if she is obliged to pay the debt, why should she be postponed to all other creditors ? Their debts were not contracted upon the faith of her property, and the law. has already vested in the husband a portion of it which it must have deemed a fair equivalent for his obligation to support and maintain her. The late case of Aguilar v. Aguilar, 5 Mad. Rep. 414, decided by Sir John Leach is opposed to the case of Tate v. Austin, decided by Lord Cowper, and sustains the principle above advanced. In that case the wife had a separate estate in the property pledged, by actual settlement, but such estate is no more distinct and exclusive than that which is left to her after serving out of it the interest that goes to the husband by virtue of the marriage. The husband has no power or control over either. This decision is also in conformity to the doctrine of Lord Hardwicke, as laid down by him in a number of cases, though not the point decided. 2 Atk. 382. 1 Ves. sen, 252. 2 id. 669. See also 2 Vern. 604, 437.
Assuming, then, that Mrs. Gahn is a surety, the principle is well established that giving time by a valid and binding agreement by the creditor to the debtor, without the assent of the surety, operates to discharge him, both at law and in equity. The reason of the principle is, that the contract between the parties is varied, and the risk of the surety enhanced, because during ihe period of indulgence given, the latter cannot go into a court of equity to compel the creditor to collect the debt, nor by paying the debt and taking an assignment of the security, immediately proceed to the collection himself. These are remedies which belong peculiarly to persons standing in the character of sureties, but which are available only when the debt is due. The agreement to postpone is therefore destructive of them. 3 Meriv. 278. 2 Ves. jun. *540. 5 John. Ch. R. 123. Theodold on Principal & Surety, 134, 135, 150. This indulgence, extended, to the principal debtor will ge *319 nerally discharge the surety, not only whether any loss has thereby happened to him or not, but even if it has been an actual benefit. 2 Ves. 540. 3 Meriv. 277. 18 Ves. 21. This position can be supported only upon the ground of the difficulty and uncertainty arising out of the nature of the inquiry, for assuming the fact of no loss or actual benefit, there can be no reason for the operation of the rule.
Has time been given to the principal debtor in this case, within the sense and meaning of the above exposition of this principle of law 1 No actual agreement to this effect is charged in the bill; and if there was such a charge, it is expressly denied by the answer; and the only agreement that can be pretended must be implied or inferred from the fact of the complainant’s receiving the note of Gahn, payable in thirty days, which included the interest in dispute. The proof of the agreement for delay lies upon the surety, as she holds the affirmative, and, as has been seen, it must be one binding in law, and therefore must contain all the requisites of a common law contract, and among others, a consideration passing between the parties. Now, it appears to me, upon principles perfectly settled, the creditor was not bound by this note so far as the interest in dispute is involved. It is not negotiable, and ranks no higher in point of obligation than a simple contract, and in this respect is in no way to be distinguished from it, except it imports on its face a consideration—but which may be explained. Mrs. N. held the bond and mortgage of Gahn for the same debt, and which at the time was due. The giving of the note, therefore, was of no benefit to. her, for she already had a higher and better security, and for the same reason it was no injury to Gahn. He was already liable for the same amount on his bond. There was, therefore, no consideration of benefit on the one side or harm on the other to raise or give effect to the implied promise of delay relied on. The case of Philpot v. Briant, 1 Moore & Payne, 754, contains the principle, and also the application of it, for which I am contending.
That was an action by the endorsee against the drawer of a bill of exchange ? and it appeared that shortly before *it fell due, the acceptor died. The plaintiff wrote to his executrix, asking when he might expect payment, and the answer was, that there was not then sufficient personal property to pay the bill, but that if he would let it stand over, she would engage to pay it out of her own private income. The plaintiff replied, he would give a reasonable time if the interest was regularly paid. The interest was so paid by the executrix out of her own income, according to the agreement. The plaintiff recovered, on the ground that the alleged agreement was not a binding contract on either of the parties, and therefore did not suspend the right to proceed against, the executors.
Chief Justice Best, in giving the opinion of the court, said that there was no consideration for the contract, and the delay in suing was gratuitous; that if the promise of the executrix of the acceptor was to be considered a promise to pay the debt, with interest out of the assets, it gave no claim to the holder beyond what the bill gave him : she was already bound to that extent; and that if it was a personal promise, it was void under the statute of frauds, not being in writing. The chief justice also cited a MS. case of the Arundel Bank v. Globe, that had been decided, and which may be found in Chitty on Bills, 296, n. containing the same principle. There the acceptor applied to the holder for indulgence for some months, which was granted on his paying the interest. It was held, that as no new security was taken from the acceptor, the agreement to wait was without consideration, and did not discharge the endorser. By new security, the court must have intended one beyond that which the party already had ; for though a new security be given, and which would afford to *321 the creditor a new remedy, yet if it was no better than the one he already held, or inferior to it, it was obvious it would constitute no consideration for a promise to delay the collection of the debt. If a principle so plain required any authority, the case of Philpot v. Briant, above referred to, is in point. There the promise of the executrix to pay the debt would be sufficient, certainly after the forbearance, to support a recovery upon it to the extent of the assets, Toll. Ex’rs. 464, 9 Cowen, 273, still it was held by the common picas in England that such promise did not constitute a sufficient Consideration to support an agreement to forbear, and the reason was because the party already had a remedy to that extent against her. The case of Pabodie v. King, 12 Johns. R. 426, contains a similar illustration. It was there decided that payment of part of a debt is not a consideration which will support a promise to forbear, because the payment of the money was doing no more than the party was bound to do ; and yet it is clear, that if the party had forborne, it would have been a sufficient consideration to have sustained the action upon a new promise to pay the balance. If these cases and principles are sound, then there can be no doubt that the note given to the creditor constituted no consideration for an implied or express promise to forbear the thirty days. It was neither a benefit to the one, or harm to the other. The bond was a higher and better security.
It is not necessary in this case to say what effect a negotiable note given for this interest might have had upon the debt, though secured by bond and mortgage. That might have been prima facie a satisfaction until due and dishonored. It is well settled that a note negotiable cannot have this effect without an actual agreement to accept it as such, and it may even be doubtful if it would then have the effect to extinguish a bond debt, or other higher security. It is not necessary to examine that question now.
But assuming that this note is valid and binding upon the parties, there is another view of the case equally decisive for the respondents. At most, it can be viewed only in the character of a new security for the debt, inferior to the one already held, both in its nature as a simple contract and as to parties, and therefore cannot operate to extinguish it without an actual agreement to that effect, and is only a new and collateral security. It is well settled that merely taking a new security from the debtor, without agreeing to give him time will not discharge the surety. Chitty on Bills, 294, and cases there cited. 3 East’s Rep. 251. 3 Barn. & Cres. 208. 4 Carr. & Payn. N. P. C. 151. 1 Barn. & Cres. 14. 8 East’s R. 575. 6 Bing. 94. In Twopenney v. Young, 3 Barn. & Cres. 208, the defendant had joined one Rumming in a joint and several promissory note, payable on demand, for the debt of *the latter. A bill of sale under seal was taken from Rumming to secure this debt among others, and it contained a proviso that it should not be enforced until after three days notice to him.
It was contended that the acceptance of this security was giving time to the principal debtor. The chief difficulty in this case will be seen to be the general principle that a simple contract security is extinguished by a higher one ; and if so, time was given ; but the court held, upon the language of the bill of sale, that it was accepted only as an additional security, and therefore, though a higher one, did not operate as an extinguishment of the remedy on the note, either as against the principal or surety. So in Emes v. Widowson, 4 Carr. & Payn. 151, which was an action upon two bills of exchange by the drawee against the acceptor; the defence was, that an arrangement had been made between the parties, by which the defendant had assigned by deed certain property as security for certain sums then due, and also all future demands, (within *323 which the bills came,) with power of sale—not however to be executed until after six months notice. But the court held the assignment to be only collateral security, and that the personal remedy was not suspended, as there was no clause in the deed to that effect. In Pring v. Clarkson, 1 Barn. & Cres. 14, it was held that taking a new bill from the acceptor after the first was dishonored, and which did not become due till some time to come, did not discharge the sureties upon the first, as there was no agreement to give time; and therefore the second was to be deemed a mere collateral security, and the receipt of it did not amount to giving time. Now, in this case, if the note is not an extinguishment of the interest, which it clearly is not, being a security of a far inferior nature, it can only operate, if at all, as a collateral security to the bond ; and if so, it cannot influence the remedy upon the latter without an express agreement to that effect, which cannot be pretended in this case. The time when the new security becomes due does not vary the effect and operation of it upon the old, as abundantly appears from the above cases. All of them became due. or could not be enforced until some time after they were taken; but *this circumstance implied no agreement to postpone the remedy upon the old security. Those cases all turned upon the point that no agreement had been made to forbear, in consideration of the new security at the time it was received, and that the mere receipt of it did not imply one. These collateral securities are daily taken in commercial dealings in this state, and I presume it never was supposed or contended that the acceptance of them would affect the remedy as to the principal debt, unless there was an express stipulation at the time to that effect between the parties.
There is still another view of this case, assuming the note valid and the time (the thirty days given for the payment of the interest) binding on the creditor, tip on which I should be willing to place this point. Whether the surety has suffered or can suffer loss or not by the delay is not to be taken into consideration, though it is very clear none has been sustained in this case ; but has she at any time, for an hour, been deprived of her remedies against the principal debtor ? If she has not, the reason of the rule of law does not exist, and she is not discharged. We are to look to the remedies as they are found in the law, and according to the practice of the courts, to settle this question, because it is these remedies as thus defined and known, to which the principle of relief refers, and upon which it is founded. The bond could have been prosecuted at any time after the note was given, and so might proceedings have been instituted to foreclose the mortgage, because the principal of the debt was untouched. And we cannot but see, regarding those remedies, that long before there could be judgment in the one case, or a decree of foreclosure and sale in the other, the thirty days would have elapsed, and the whole amount of the debt, principal and interest, would be collectable. The interest included in the note would follow the debt and be embraced in the judgment or decree of foreclosure, in the same way as the interest which would accrue after suit brought. I can see no escape from this conclusion. The surety may instantly pay the whole debt, and take an assignment of the securities, and prosecute or go into equity to compel the creditors to proceed on them. This is all she can do in any case, and it is clear, in either way, all the interest would follow the condition of the principal, unless these proceedings could be perfected against the debtor in thirty days, which we cannot but see would be impossible. Her remedy therefore has not been varied.
I also concur with the chancellor in the principle upon which he placed the decision of this case in the court below. In order to discharge a surety in consequence of a variation of the contract, or by a deprivation of his equitable rights *324 and remedies, not only the fact of suretyship must exist, but it must be known to the creditors at the time of the act complained of. If the fact appears on the face of the security, that is enough ; if not the knowledge of it must be brought home to the creditors by the surety, clearly and satisfactorily, because, as all parties appear upon the instrument as principals, it is deceptive and calculated to mislead. The surety therefore should be holden to strict proof. Now it is well settled, as will be seen from the authorities referred to on the first point considered in this opinion, that if the loan to secure which the wife has pledged her separate property, was intended for the benefit of her estate, or as a bounty to the husband, the relation of principal and surety or debtor and creditor does not exist between them. The fact of Mrs. Gahn signing the security as a prin cipal debtor, is some evidence to the creditor that she intended to put herself on that footing, but I admit that it is not conclusive and may be explained; the fact that the loan was made to the husband was known to the creditor, and undoubtedly she knew that the mortgage security was upon the property of the wife. So much is established by the pleadings and proofs, But I cannot say it necessarily follows from all this, that the creditor knew she intended to be holden only as a surety for her husband. I rather think, from the manner of signing the mortgage and the relation existing between husband and wife, together with the facts well known to Mrs. Niemcewicz in this case, that the property of the wife was chiefly relied on to support the family establishment, and was of itself subject to onerous assessments, a contrary inference would be the strongest and most just. Be that as it may, it is quite clear upon the pleadings and proofs, particularly from the letters of Gahn before and after the loan, that *it was made for the benefit of his wife’s property, to pay repeated assessments upon it and support the family, and thereby avoid the necessity of a sale of a part of it. This was extremely desirable to prevent a sacrifice, as it was fast increasing in value by the rise in real estate in that part of the city. Whether this information, thus given to Mrs. Niemcewicz is correct or erroneous is immaterial as to her; if she had reason to believe it, we cannot overlook it, and are to presume she acted on the subject under its influence. That she had reason enough for such belief is evident from many of the letters addressed to her by Gahn in the course of the business.
Upon the whole, I have come to the conclusion, sastisfactory to myself, that Mrs. Gahn is to be viewed as having executed the mortgage upon her property as surety for her husband, and is entitled to all the rights and remedies which ordinarily belong to a person in that character against the principal debtor, with the qualification growing out of the limitation of her remedies against her husband, from the relation of husband and wife ; that there was no valid or binding agreement, express or implied, arising out of the acceptance of the note in this case by the creditor, by which time was given to the principal debtor; and that if there was to the extent claimed, it did not vary the legal effect of the contract, or the remedies of the surety upon it; and that if it had, the creditor, in making the agreement by which time was given, made it without a competent knowledge of the fact of the suretyship of Mrs. Gahn, and therefore she is not discharged. For these reasons, I am in favor of affirming the decree of the chancellor.
By Senator Tract. The reasoning of the chancellor, and the authorities cited in the opinion delivered by him in this case, (3 Paige’s R. 629,) have satisfactorily established, to my mind, the two following propositions : 1. A person who mortgages or pledges his property by way of security for the debt of another, although he does not become personally bound for the debt, is still a surety entitled to the benefit of those rules of equity which are applied to sure *326 ties who do become personally bound for the debts of others. 2. A wife, mortgaging her inheritance for the security of her husband’s debt, is entitled *to the privileges of a personal surety, and may claim the benefit of those equitable rules which are constantly applied for the protection of sureties.
A third general proposition presented by this case is not disputed, to wit, that the surety is only bound by the terms of the contract, and if the creditor, by agreement with the principal debtor, without concurrence of the surety, varies the terms, as by enlarging the time or otherwise, the surety is discharged. But, although this principle is not disputed, the chancellor intimates that it may have been carried too far in cases of mere extension of time, and where the surety has sustained no injury by the delay ; and he observes, “ As the whole of this doctrine depends upon the equitable principle that the creditor shall do no act to the injury of the surety, it is doubtful whether a mere extension of time, where the surety was not injured thereby, should have been held to discharge his liability, except in those cases where the rights and duties of the parties are regulated by and form a part of the contract.” What are the cases to which the chancellor refers, where the rights and duties of the parties &re not regulated by and form a part of the contract, I am unable to say ; but the rule is certainly well established now, that a court of equity will not suffer the inquiry whether an extension of time given to the principal debtor, without the assent of the surety, has or has not been injurious to the surety. In Rees v. Berrington, 2 Ves. 540, where the obligee of a bond took notes from the princi£al debtor, and gave further time on the bond without the assent of the surety, ord Eldon says, “ I cannot try the cause by inquiring what mischief it might have done, for that would go into a vast variety of speculation upon which no sound principle could be based.” Again, in Boultbee v. Stubbs, 18 Vesey, 20, he says, “ It is vain to say the indulgence to the principal, by taking the mortgage and giving time, may be for the benefit of the surety. It is in most cases for the advantage of the surety ; but the law takes so little notice of that circumstance, that if the acceptor of a bill become bankrupt, the holder must give notice to the drawer, as another person has no right to judge what are his remedies.” Samuel v. Hoarwell, 3 Merivale, 272, and Bowmaker v. Moore, 3 Price, 214, as well as *several other cases, both English and American, are to the same point.
In seeking for facts in this case, to which these principles may be applied, we have to inquire, 1. Did the appellant, Mrs. Gahn, execute the mortgage of her land for the security of the debt of her husband ? 2. Did the mortgagee, Mrs. Niemcewicz, know this fact ? and 3. Did she, Mrs. Niemcewicz, extend the time for the payment of a part of the money due on the mortgage without the consent of the surety ? As to the first point of inquiry there can be no doubt, and I believe there is no controversy. Mrs. Niemcewicz, in her answer to the cross bill filed by the appellant, admits that the property mortgaged belonged to the appellant, and I understand her answer also to admit that she knew this fact at the time of receiving the mortgage ; but whether she admits this or not, it must be presumed that a mortgagee is cognizant of the title to the estate mortgaged. That Mrs. Niemcewicz knew the relation in which the appellant stood, both to the estate and to the debt for which it was mortgaged, the circumstances of the transactions leave no room for doubt. The only remaining part of the inquiry is, whether the appellant shall be regarded as having executed the mortgage as a principal debtor or as a mere surety. The fact that the mortgage was executed for the security of a bond given by Gahn alone, would be decisive, were it not that the wife’s incapacity *328 to contract personal obligations would have required the bond to be taken in the same form, although it had been intended and known by all the parties that the money loaned was for the exclusive benefit of the wife’s estate. But this consideration, although it diminishes, does not, I think, entirely destroy the force of this fact. It still affords a presumption that the wife was only a security for her husband’s debt; and a presumption which every other part of the transaction contributes to fortify. A part of the money secured was undoubtedly the debt of the husband alone, being a debt due from him before his marriage, and about one third was for money lent him immediately after his marriage. It is conjectured that the money, or a part of it, may have been applied to improve and benefit the wife’s estate; but this is not a fact to be presumed ; it should be proved.
*Mrs. Niemcewicz does not even allege in her answer, notwithstanding the complainant asserts in her bill, “ that no part of the moneys mentioned in the bond for which she executed the mortgage as security was ever received by her, or applied to the benefit or advantage of her property.” I cannot agree with the chancellor, that because Mrs. Niemcewicz may have “ supposed the moneys loaned by her were for the benefit of the wife, as well as the husband, to prevent the necessity of a sale and sacrifice of her estate, to keep up and support their family establishment while that estate was increasing in value,” that therefore, even if such were not the facts, she was jutified in regarding Mrs. Gahn in the light of a principal; on the contrary, if it was proved that the money loaned to Gahn was necessary to keep up and support his family establishment whilst his wife’s estate was increasing in value, it does not follow that the wife is not to be regarded as a surety. It was Gahn’s duty to support his family without consuming his wife’s estate for the purpose ; but if he could not do so, it is not to be assumed that Mrs. Gahn would have consented to its being sacrificed for the purpose of keeping up their establishment. This is taking assertion for presumption, and presumption for fact. Against such a process of reasoning, it would be impossible for a wife ever to maintain her character of surety for a debt contracted by her husband. Again, the chancellor says, that he does not understand Mrs. Niemcewicz to admit “ that she was aware that the moneys loaned were to be applied to Gahn’s own use, or that she was apprized of any agreement or understanding between the husband and wife that he was to pay off the mortgage moneys with his own means.” If she does not admit that the moneys loaned were for Gahn’s own use, she does not deny it, although the complainant expressly charges that they were. But I think she should have proved that they were for the benefit of Mrs. Gahn’s estate. Her not knowing of an agreement between husband and wife that he should pay off the mortgage moneys, depends on the fact whether the loan was to the husband alone ; if it was, it is a necessary inference that he had agreed to indemnify his wife for becoming his surety. But if there was not an express understanding *between husband and wife, there was between him and Mrs. Niemcewicz, that he would pay off the mortgage with his own means. This appears by her answer, in which she states that Gahn was constantly holding out to her, as she believes in good faith, that from other sources he would be able to liquidate her whole demand.
On the whole, though I consider Mrs. Niemcewicz, throughout her transactions with Mr. Gahn, to have acted in a spirit of great liberality and kindness, yet I cannot doubt that she regarded him as the only person to whom and for whom all the accommodations were made. This undoubtedly was the case in regard to the large sums which she from time to time loaned to him without *330 mortgage security; and there is not, as I perceive, any circumstance to distinguish the object of those loans from the object of the loans secured by the mortgage. The only remaining fact is that of the mortgagee’s extending the time for the payment of a part of the money due, without the concurrence of the appellant. This is sufficiently established. It is not controverted that she took Gahn’s negotiable note, in which was included all the interest due up to the first day of February, 1825. This gave time for so much ; it suspended the claim pro tanto for the term for which the note had to run, and so far varied the rights of the creditor. I conclude with expressing my concurrence in the principles of the decree pronounced by the vice chancellor, and am therefore for reversing the decree of the chancellor.
On the question being put, Shall this decree he reversed ? the members of the court voted as follows :
In the affirmative—The President, and Senators Hubbard, Stower, and Tracy—4.
In the negative—The Chief Justice, Justice Nelson, Senators Armstrong, Beardsley, Conklin, Cropsey, Deitz, Dodge, Edmonds, Edwards, Fisk, Gansevoort, Lansing, Lynde, MacDonald, Van Schaick Westcott—17.
Whereupon the decree of the Chancellor was affirmed, with costs.